# Allen P. Musick v. The Borough of Latrobe, Appellant.

*Evidence—Expert testimony—Highways—Dangerous condition of high-ways—Municipalities.*

If a defect or obstruction in a highway is such as admits of a full and adequate description, the question whether it is dangerous or not, is not a question of skill or art requiring the aid of expert testimony, but like other questions of fact is to be determined by the jury.

*Negligence—Contributory negligence—Charge of court.*

In an action to recover damages for personal injuries, the defendant asked an instruction to the effect that if the conduct of the plaintiff at the time of his injury was negligent, and if his negligence "contributed in any degree to his injury" this should preclude a recovery of damages by him against the defendant. The court refused the point saying: "This point will require us to dispose of the whole case. Under all the facts of this case that question is to be disposed of by the jury." *Held*, (1) that the reply of the court was not an answer to the point; (2) that the requested instruction did not encroach on the province of the jury, but raised a question over the legal effect of contributory negligence which was clearly one of law upon which it was the duty of the court to give the jury distinct and definite instructions.

The effect of certain enumerated facts in establishing plaintiff's contributory negligence is for the jury, and a request for the court to pass upon that effect is properly refused.

*Municipalities—Care of alleys—Negligence.*

A municipality is not bound to the same degree of care over its alleys as over its streets, until the alley, by its use, in fact, becomes a public street. The care bestowed on each must be measured by its public use, and is proportioned to its character and the public needs.

*Negligence—Damages—Pain.*

Pain is not susceptible of exact compensation by any pecuniary standard, but it is an element to be considered in determining the amount of injury which a plaintiff has sustained, and is to be considered, with all the attending circumstances, with a view of making practical compensation to the plaintiff for his actual loss.

*Negligence—Boroughs—Hole in alley—Contributory negligence—Province of court and jury.*

In an action against a borough to recover damages for personal injuries suffered by falling down the steps of an unprotected entrance to a cellar way in an alley twenty feet wide, the question of the plaintiff's contributory negligence is for the jury where the evidence shows that the night of the accident was dark and stormy; that the alley was used by the public, but that plaintiff was not familiar with it, and that he entered it to answer a call of nature.

Argued Oct. 14, 1897. Appeal, No. 86, Oct. T., 1897, by defendant, from judgment of C. P. Westmoreland County, May T., 1894, No. 399, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Reversed.

Trespass for personal injuries.

At the trial it appeared that plaintiff, on the night of October 14, 1893, fell down the steps of an entrance to an unprotected cellar way leading from an alley twenty feet wide in the borough of Latrobe. The night was dark, and it was raining. The plaintiff lived a few miles from Latrobe, and was not familiar with the alley.

Plaintiff in his testimony described the accident as follows:

" Q. You were crossing over Ligonier street, and coming up to the alley? A. Yes, sir. Q. Where were you going to up the alley? A. I was going up to Osborne's livery stable. Q. What was your purpose in going in there? A. I was going in there to urinate. Q. Does the livery stable of Mr. Osborne face on the alley; straight on the line of the alley? A. Yes, sir; there is nothing between; it is open right to the alley. Q. What two places are there on the opposite corners of the alley? A. The livery stable is on the right hand side, and Potthoff's jewelry store is on the other side. Q. Both these face Ligonier street? A. Yes, sir. Q. Which building were you near to as you crossed the street? A. I crossed the street right on the opposite side of the Parker House, across this to the right, and came right across to the corner, and turned to my left, right up alongside of his building, to come up this alley. Q. What happened to you there? A. It was a dark, rainy night, it was in the fall, it was cloudy like, and I knew this place was up in this alley, and came to the corner and turned

around, and I thought I could go across the alley; it was kind of muddy in the alley. The arc light gave a little light past the corner. I saw what looked like a stone walk, and I thought I would follow that up and cross the alley, and I had only made a couple of steps until I fell down this hole. Q. Is Potthoff's building on the line of the alley? A. Yes, sir; right on the corner. Q. Runs along the alley? A. Yes, sir. Q. What time in the evening was this? A. As near as I can tell it was about half past eight. Q. How far is it from the corner of the Potthoff building to the beginning of this hole that you fell into? A. It is a little bit over four feet; about four feet six inches to the top step where it starts down. Q. How wide is the hole? A. Three feet. Q. Do you know how long it is? A. About twelve feet, as near as I can tell. Q. How deep is it? A. Seven or eight feet. Q. You have examined the hole since? A. Yes, sir; I looked at it the next Tuesday. Q. What was the hole there for; what was it made for? A. It was a cellar way to get down into Mr. Potthoff's store; I never was down, but I suppose that is what it is intended for, there is a door there. Q. What was there to get down that? A. Stone steps down running from Ligonier street. Q. Of what character was the outside wall of this area way? A. It just faced up level; the wall slopes a little bit; the hole goes into a sort of a dish in the middle, and this is just a stone wall slanting down this side and over the top."

Albert Bossart, a witness for plaintiff, testified:

"Q. Mr. Bossart, describe the location and general dimensions of the area way, as it was in the alley, and its distance from the corner of the street. A. I would presume it is about four and one half to five feet from the corner of the curb at the side of the house in there; it is about three feet wide. Q. How long? A. I would say about eleven to twelve feet. Q. How deep? A. About seven and one half to eight feet deep at the deepest place; I never measured it though. Q. Was this excavation out on the alley? A. It is on the alley; on borough property. Q. If a person were going in past the Potthoff building on a dark, rainy night near to the excavation, and there were no guards, signals, or other obstructions around this hole, state what your opinion is with regards to the danger of the place."

This is asked for the purpose of showing in the light of the testimony already in, that the locus in quo was a place of danger to pedestrians in the lawful use of the alley, for the purpose of showing negligence on the part of the defendant in maintaining it in such condition.

The question was objected to by the counsel for the defendant, for the reason that while the witness might detail the exact condition of the alley, he is not supposed to determine whether or not its condition amounts to negligence on the part of the borough, and that it is an hypothetical case, and an opinion by the witness which is the province of the jury to determine, and is therefore incompetent and irrelevant.

By the court: Objection overruled, and exception for the defendant.

"A. It would be dangerous. Q. As you described the condition of the area way the next morning after the accident, state whether or not the place would be dangerous. A. It would be dangerous." [1]

Plaintiff's points and the answers thereto among others were as follows:

2. By throwing open its streets, alleys and highways to public travel, the borough thereby invites the public to use the same as its business demands; it is therefore the duty of the borough to maintain its streets and alleys in reasonably safe condition, and clear of obstructions and pitfalls; and its failure to perform this duty is negligence. *Answer:* That we affirm. [2]

5. We instruct you that the fact that the borough of Latrobe, defendant, had an ordinance permitting cellar ways, etc., constitutes no defense to an action brought for personal injuries received in falling into an area way in a public alley, if you find the same was dangerous, and the plaintiff guilty of no contributory negligence. *Answer:* That we affirm. [3]

6. If in view of all the evidence, the jury find for the plaintiff, then his measure of damages is as follows: The jury must allow in estimating his damages the expense arising in consequence of plaintiff's injury, compensation for the time his injury prevented him from engaging in his employment, and for the privation and inconvenience he is subject to and is likely yet to be subjected to, and for the suffering he has endured bodily and mentally, and which he is likely to experience during the remain-

der of his life, as well as compensation for the decrease or loss of his earning power by reason of the injury during the remainder of his life. *Answer :* Affirmed. [4]

Defendant's points and answers thereto among others were as follows:

3. However much the defendant may be in fault, if this plaintiff himself was guilty of negligence in going up that alley, with which he was not acquainted, and under the conditions which he described, to wit: that it was dark, raining and storming; and if his negligence contributed in any degree to the injury which he suffered, the law holds that he cannot recover any damages. *Answer :* This point would require us to dispose of the whole case. Under all the facts of the case, that question is to be disposed of by the jury. You will take into consideration all the facts of the case, and say whether under the circumstances as you find them to be, there was negligence on the part of the plaintiff. We will not say to you that the facts recited are, per se, negligence. [5]

5. The borough authorities are not required to exercise the same degree of care in maintaining alleys as in maintaining public streets and sidewalks, and therefore it was incumbent upon the plaintiff to exercise more care, prudence and vigilance in passing over this alley under the conditions which he describes, than he would have been compelled to exercise in passing over a street or sidewalk in the said borough. *Answer :* We will not affirm this point as a matter of law. We think the same degree of care is to be exercised against dangerous places whether their location is in a street or in an alley, that is to say, a municipality must take into consideration the nature and extent of the use to which an alley is subject, and the character of that use, and its care must be reasonably adequate to protect the public according to the use to which it is subjected,—and the same is no more or no less true of a street. As a matter of fact, it can be safely assumed that the manner of keeping the ordinary alley is not the same as the keeping of the ordinary street in the thickly populated part of a town. That being the case, and the plaintiff, necessarily visited with that knowledge from his general knowledge of streets and alleys, would have to deport himself in view of that knowledge and in subordination to it, and use ordinary care and prudence, considering all those things. [6]

6. A party cannot recover damages for an injury which by the exercise of reasonable care he might have avoided, and the plaintiff in this case having testified that he was unacquainted with this alley, that the night was dark, wet and stormy, so that he could not see where he was going, and that he knew of a safe way back to the stable yard through the stable from Ligonier street, we instruct you that plaintiff in going into the alley did not exercise such reasonable care as the law requires under the circumstances; that his conduct amounted to contributory negligence, and he cannot recover in this action. *Answer:* We refuse these instructions. The first paragraph of that point, namely: "A party cannot recover damages for an injury, which by the exercise of reasonable care he might have avoided," is correctly stated. We will not take from you the duty of passing upon the facts that are recited in the latter clause of this point. Under all the circumstances of the case, the question is for you. [7]

7. An alley in a borough is like a public road in a borough, and requires only the same degree of vigilance on the part of the borough, and it is sufficient if a track for wagons and foot passengers is kept in smooth condition, safe and convenient for travel; it being the uncontradicted evidence in this case that an unobstructed track of seventeen feet existed in this alley, when the plaintiff under the conditions testified to by him, wandered from that clear track and was injured by an obstruction on the side, he did not exercise the vigilance required under the circumstances, and cannot recover in this action for the injury received. *Answer:* That, we refuse, for the same reason that we refused sixth point. [8]

9. The conduct of plaintiff, as detailed by his own statement on the witness stand, in going into a dark alley on a dark, stormy, rainy night, without any acquaintance with or knowledge of the condition of the alley is negligence per se. *Answer:* That would require us to say, as a matter of law, that a person seeking the dark to attend to a call of nature, was guilty of negligence per se in going into it. We will not so instruct you. The question of negligence is for you. That point is refused. [9]

10. A municipal corporation is not, as a matter of law, irrespective of locality and surroundings, liable for an injury re-

ceived by a person who falls into an opening made by a third
person in a sidewalk for a stairway, where the entrance only is
left open, and the plaintiff in this case having testified that his
injury resulted from falling into the opening in question, at the
entrance to the stairway, we instruct you that for the purposes
of this case, it does not matter whether the balance of the area
way was open or not, the defendant is not liable for the plain-
tiff's injury. *Answer:* This point we refuse. The question
is for you to pass on—the circumstances of this excavation, its
guarding, its location and all that sort of thing, and say under
all the circumstances of the case, whether or not there was
negligence on the part of the defendant. The first part of
this point is correctly stated: "That a municipal corporation
is not as a matter of law, irrespective of locality and surround-
ings, liable for an injury received by a person who falls into
an opening made by a third person in a sidewalk for a stair-
way." The question of surroundings and locality is to be
passed on, and also the fact of its being located in the alley
where it is not illuminated by the town lights, if it is not so
illuminated; all that is to be taken into consideration. We
refuse this point for that reason. [10]

14. Under all the evidence in this case, your verdict must be
in favor of the defendant. *Answer:* This, we refuse, as we
have already said. [11]

The court charged in part as follows:

[Now then, let us understand as clearly as possible what
duties the law exacts from the defendant borough in a case of
this kind. Among the numerous powers of the borough it is
prescribed that it shall have power to survey, lay out, enact and
ordain such roads, streets, lanes, alleys, courts and common
sewers as they may deem necessary, and provide, enact and
ordain the widening and straightening of the same. Also to
prohibit the erection or construction of any building or work,
excavation or other obstruction, and the opening, widening and
straightening that would interfere with the convenient use
thereof, and also to regulate the roads, streets, lanes, alleys,
common sewers, etc. These express provisions of the statute
law and the principles that constitute these express provisions
govern a municipality of this sort and define what its powers

and what its duties are. The liability of the borough in view of certain matters to which I will endeavor to call your attention, is commensurate with its duty.

Now then, having the power to lay out these streets, lanes, and alleys, and having the power to prevent any obstructions or excavations that would interfere with the convenient use of them, and having the power to regulate these streets, lanes and alleys, we next inquire whether or not the defendant borough came up to the measure of its duty in this regard. Now, in examining this question you must have in view the purpose for which a street or an alley or a lane is dedicated. You must have in view the ordinary use for which it is designed, the frequency of that use made, the constancy of it and the locality of it and the kind of user which it is to be subjected to. All these things you must have in mind, and you will recollect that the defendant borough is not an insurer against accident.

It is ordinary care that is demanded. The care that is exacted from the defendant borough is that it provide for the ordinary wants and necessities of the borough in this regard. Now it is incumbent upon them to provide that which will be ordinarily convenient for the use of the borough, and it must also provide that persons using these streets, lanes and alleys will be reasonably secure in their ordinary use of them.] [12]

Verdict and judgment for plaintiff for $1,483.33. Defendant appealed.

*Errors assigned* were (1) ruling on evidence, quoting the bill of exceptions; (2–12) above instructions, quoting them.

*John F. Wentling*, with him *David A. Miller, Frank B. Hargrave* and *Edward B. McCormick*, for appellant.—When the circumstances are such that they can be fully and accurately described to the jury, and their bearing on the issue estimated by persons without special knowledge or training, opinions of witnesses, expert or other, are inadmissible: Platz v. McKean Twp., 178 Pa. 601; Auberle v. McKeesport, 179 Pa. 321.

It has always been the law in Pennsylvania that obstructions within certain limits were permitted on the streets of towns and cities, and especially on alleys: Stackhouse v. Vendig & Co., 166 Pa. 582; Livingston v. Wolf, 136 Pa. 519; King v. Thompson, 87 Pa. 365.

Pain cannot be measured in money. It is a circumstance, however, that may be taken into the account in fixing the allowance that should be made to an injured party by way of damages : Goodhart v. Penna. R. Co., 177 Pa. 1 ; Baker v. Penna. Co., 142 Pa. 503.

In view of the notorious and perverse tendency of juries, not only to find verdicts in this class of cases for plaintiffs who are not entitled to anything, but also to give exaggerated amounts even in meritorious cases, any expression that tends to suggest to the jury that it is not subject to the strict control of legal principles, is undesirable, and may be erroneous, as was held in R. R. Co. v. Adams, 89 Pa. 31, and Collins v. Leafey, 124 Pa. 203.

A municipality is not bound to observe the same care as to alleys as to streets : McCloskey v. Bells Gap R. R., 156 Pa. 254 ; Monongahela City v. Fischer, 111 Pa. 9.

If the alley was lighted, the plaintiff did not use his eyes to see where he was going as the law requires. If the alley was dark, as he says, so that he could not see where he was going, and he bolted in there without a light, then surely he was so recklessly negligent that he should not be permitted to recover in this action : R. R. v. Cadow, 120 Pa. 559 ; Catawissa R. R. v. Armstrong, 52 Pa. 282 ; Pittsburg & Conn. R. R. v. Mc-Clurg, 56 Pa. 294 ; McKee v. Bidwell, 74 Pa. 218 ; Erie v. Magill, 101 Pa, 616 ; Robb v. Connellsville, 137 Pa. 42.

*Albert H. Bell,* with him *W. S. Byers,* for appellee.—Where mere descriptive language is inadequate to convey to the jury the precise facts, or their bearing on the issue, the description by the witness must of necessity be allowed to be supplemented by his opinion in order to put the jury in position to make final disposition of the fact : Platz v. McKean Twp., 178 Pa. 601 ; McNerney v. Reading City, 150 Pa. 611 ; Cookson v. P. & W. Ry., 179 Pa. 184 ; Beatty v. Gilmore, 16 Pa. 463 ; Kraut v. Ry., 160 Pa. 327 ; Kitchen v. Union Twp., 171 Pa. 145.

A municipality is bound to keep its streets in repair : Mc-Laughlin v. Corry City, 77 Pa. 112 ; Newlin Twp. v. Davis, 77 Pa. 321 ; Glase v. Philadelphia, 169 Pa. 492 ; Arnold v. R. R., 115 Pa. 139.

There is no just ground for complaint at the rule stated by

the learned court as to the measure of damages : Scott Twp. v. Montgomery, 95 Pa. 444; Penna. & Ohio Canal Co. v. Graham, 63 Pa. 299 ; R. R. v. Books, 57 Pa. 339 ; R. R. v. Allen, 53 Pa. 276 ; Ry. Co. v. Donahue, 70 Pa. 119.

In an action to recover damages for personal injuries, whether plaintiff was or was not guilty of negligence which contributed to the injury must be inferred from all the facts and circumstances disclosed by the testimony ; and such inferences of fact are for the jury and not for the court: Merriman v. Phillipsburg, 158 Pa. 78; Chilton v. Carbondale, 160 Pa. 463 ; Easton v. Neff, 102 Pa. 474; Altoona v. Lotz, 114 Pa. 238 ; Biggs v. Boro., 164 Pa. 341; R. R. v. Cadow, 120 Pa. 559 ; Erie v. Magill, 101 Pa. 616 ; McKee v. Bidwell, 74 Pa. 223 ; Pa. R. R. v. Barnett, 59 Pa. 259 ; Johnson v. Bruner, 61 Pa. 58.

OPINION BY MR. JUSTICE WILLIAMS, January 3, 1898 :

The general rule is well settled that the province of a witness is to state facts, and that of the jury is to draw conclusions from them.   There are some exceptions to this rule, particularly when the facts are of such a character as to make it necessary, or at least helpful, that the jury be guided in drawing their conclusions by the testimony of persons possessing superior knowledge of the subject under investigation.   In such cases the opinions of expert witnesses are given to the jury as to the effect of certain given facts, or their own conclusions drawn from a personal examination of some object.   Witnesses have also been allowed to express opinions upon the safe or unsafe character of machinery, or of the condition of a highway, when an oral description by witnesses would not adequately present the situation to the jury.   But if the defect or obstruction complained of is such as admits of a full and adequate description, the question whether it is dangerous or not is not a question of skill or art requiring the aid of expert testimony, but like other questions of fact is to be determined by the jury. They must learn the facts from the witnesses, and then draw their own conclusions as to the dangerous character of the highway, as well as to the contributory negligence of the traveler who suffers an injury.   In all ordinary cases it would be as appropriate for a witness to give his opinion about whether the plaintiff's conduct amounted to contributory negligence or not,

as to whether a situation fully described by him is dangerous in its character. The first assignment of error which complains of the admission of such testimony in this case is sustained.

The defendant's third point asked an instruction to the effect that, if the conduct of the plaintiff at the time of his injury was negligent, and if his negligence " contributed to any degree to his injury," this should preclude a recovery of damages by him against the defendant. The learned judge refused this point, saying " This point would require us to dispose of the whole case. Under all the facts of this case that question is to be disposed of by the jury." This was not an answer to the point.

The question raised was over the legal effect of contributory negligence, if found to exist, on the plaintiff's right to recover. It was clearly a question of law upon which it was the duty of the court to give the jury distinct and definite instructions; which it was as clearly the duty of the jury to accept and act upon. It is probable that in the haste of the trial the effect of the point was misapprehended, but the answer was none the less erroneous. The fifth assignment of error which is directed to this answer of the learned judge is sustained.

In the sixth point the question on which the court was asked to pass was the effect of certain enumerated facts in establishing the contributory negligence of the plaintiff. The effect of these facts was for the jury, and the instruction was properly refused. The same may be said of the ninth point. It asked the court to declare the conduct of the plaintiff in entering the alley on that night to be negligence, as matter of law. This was properly declined, because on all the evidence the question was one of fact for the jury. The sixth and twelfth assignments of error relate to the instructions of the court in regard to the duties of municipalities in the care of streets and alleys. They are not sustained. Ordinarily the alleys in a borough are little used by the public, and do not need to be kept in the same state of repair as the traveled streets. The care of the municipality over them should be proportioned to the public use that is made of them. The alley in which the accident happened was apparently safe during the day. If it was in use during the night as a thoroughfare, that fact was one of which the borough was bound to take notice. The general statement that the municipality was bound to the same degree of care

over its alleys as over its streets is not correct. The care to be bestowed upon each must be measured by the public use. When an alley does in fact become a public street by its use, it should receive the attention that a public street requires; but until it becomes a traveled thoroughfare in fact, it is not incumbent on the borough authorities to treat it as such. The measure of care is proportioned to its character and the public needs. We cannot say there was error in the instructions relating to the measure of damages. Some further explanations would have been helpful to the jury, perhaps, especially in regard to compensation for pain. Pain is not susceptible of exact compensation by any pecuniary standard. It is however an element to be considered in determining the amount of injury which the plaintiff has sustained. It should be considered in connection with all the attending circumstances, with a view to making practical compensation to the plaintiff for his actual loss. Estimates of a fanciful or sentimental character are to be carefully avoided. It is not every twinge of pain that can properly be make a subject of compensation; but the actual injury sustained by the plaintiff, including the loss of time, the personal injury inflicted, and its consequences in suffering and impairment of earning power. All these should be considered in a practical, businesslike way in making up the verdict.

The judgment is reversed and a venire facias de novo awarded.